Decided 2 July, 1907.

**FAGAN v. WILEY.**

90 Pac. 910.

REFORMATION OF INSTRUMENTS—FRAUD—MENTAL CAPACITY.

1. The evidence does not show fraud by the vendee as to the transaction in question or any taking advantage of the intoxicated condition of the vendor, who was not so drunk as to be incapable of understanding his conduct.

REFORMING CONTRACT FOR DRUNKENNESS OF ONE OF THE PARTIES.

2. To avoid a contract on the ground of intoxication the party seeking relief must have been altogether incapable of understanding his action—which was not the case here.

VENDOR AND PURCHASER—EXCESSIVE PRICE—FRAUD—BURDEN OF PROOF.

3. Where it appears that the price paid by an intoxicated purchaser was exorbitant, and the transaction is questioned for fraud, the burden of proof in showing that advantage was not taken of such purchaser rests on the vendor.

From Wasco: WILLIAM L. BRADSHAW, Judge.

Suit by Patrick Fagan against W. N. Wiley, resulting in a decree as prayed for, from which defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Huntington & Wilson* and *Menefee & Wilson,* with an oral argument by *Mr. Fred Wilson.*

For respondent there was a brief over the name of *Bennett & Sinnott,* with an oral argument by *Mr. Nicholas John Sinnott.*

Opinion by MR. JUSTICE MOORE.

1. This is a suit by Patrick Fagan against W. N. Wiley to reform a promissory note, given by the defendant to the plaintiff August 21, 1904, but by mutual mistake dated 10 years prior thereto, to recover the amount specified in the instrument, and also a reasonable sum as attorney's fees. The defense relied upon is alleged mental incapacity of the defendant, caused by excessive intoxication, of which condition the plaintiff took advantage by persuading him to purchase lot 6, in block 6, in Bigelow's Addition to Dalles City, Oregon, for $5,000 and to give a note for $500 as a part of the purchase price; that the sum stipulated to be paid for the land is exorbitant and inequitable as compared with its value, by reason whereof and of the defendant's plight the note referred to is wholly without consideration and void. The reply put in issue the allegations of new matter in the answer, and, the cause being tried, a decree was rendered as prayed for in the complaint, from which the defendant appeals.

Considering the defendant's alleged mental condition at the time the note was given, he testified that on Sunday, August 21, 1904, he visited a saloon at Dalles City at about 11 o'clock in the forenoon, and played cards, taking a drink of whisky probably every half hour until the lights were turned on at night, when he left the building, intending to go home, but that he did not know where he went or what he did, except that he had a faint recollection of having signed some papers; that he could not remember when he reached his residence that night, and the next day he was so ill from the effect of excessive drinking that he remained in bed until 2 o'clock in the afternoon; that two days thereafter he was informed by the plaintiff that he

had purchased the property mentioned and given a promissory note for $500 in part payment thereof, whereupon he offered to pay any expense that had been incurred in preparing the papers, and demanded their return, claiming that, by reason of his mental incapacity, he was not liable thereon, but the plaintiff refused to comply with his request.

C. P. Johannsen, a saloon keeper, testified that on the Sunday in question, at about 6 o'clock in the evening, Wiley came into his place of business very drunk and staggering. The testimony of this witness is corroborated as to the defendant's condition, by W. Dalrymple and E. P. Farley, who saw Wiley on the street about the hour last mentioned. T. Hayden and John Crate severally testified that on the evening referred to the defendant was drunk. J. Parodi testified that about 8 o'clock that night, as he and one T. A. Wood were standing on a street corner in front of a saloon, the defendant approached them in a drunken condition, and soon thereafter the plaintiff came along, whereupon the conversation turned upon real property; that, at Fagan's invitation, they entered the saloon, where it was agreed that Wiley would buy the plaintiff's lot for $5,000. Wood corroborates Parodi's testimony, except that he states that Fagan was talking with them on the street about the value of certain property, when the defendant arrived and offered $5,000 for the lot mentioned, in answer to Fagan's inquiry as to what he would give for it, and, in referring to the defendant's condition at that time, he testified as follows: "As far as I could understand Mr. Wiley's conversation, it was perfectly rational and in a business way." It also appears that about 9 o'clock that night the parties subscribed their names to a contract, which, omitting their signatures and the names of the subscribing witnesses, is as follows:

"The Dalles, Oregon, Aug. 20, 1904.

I agree to sell my property, situated on the corner of Third and Federal streets in Dalles City, Oregon, to W. N. Wiley for the agreed price of $5,000.00 (five thousand dollars). Payments to be made as follows: One thousand (1,000.00) in one year; one thousand (1,000.00) in two years, and two thousand

five hundred in three years. All to be at the rate of six per cent interest after deeds are made out, and Mr. Fagan is to finish the gutter on sidewalk from Fourth St. to Third, and also Mr. Fagan is to collect rent from the premises to the 15th of August, 1904.

I acknowledge the payment this day of five hundred dollars ($500.00) on above contract."

The promissory note sought to be reformed is the payment referred to in the memorandum quoted. As these papers were prepared and signed on Sunday, they were dated as of the preceding day, except that the note contained in the upper right-hand corner the printed figures "189—," after which the figure 4 was annexed. Crossen, as plaintiff's witness, having testified that he prepared and reduced to writing the contract as the parties thereto mutually considered and agreed upon the terms, was interrogated as follows:

"I will ask you to state what was Mr. Wiley's mental condition at the time he signed this contract and discussed the matter and signed the note?"

And the witness replied:

"Well, his mind seemed clear."

The opinion thus expressed is corroborated by several other witnesses. The value of the real property at the time the contract was signed was about $2,500 or $3,000, as estimated by N. Whealdon and W. A. Johnson, respectively, who were competent to determine the worth thereof. The testimony further shows that the defendant owned at that time three lots which joined the premises described in the asnwer, and, when the contract was prepared, he stated that the land which he was buying was worth more to him than to any other person.

2. The use of beverages containing alcohol invariably causes intoxication, the degree of which does not, like other poisonous substances taken into the human system in a given time, always depend upon the quantity imbibed, but the race and the age, habits and physical and mental condition of the particular individual thereof are factors which explain and largely account for the measure of inebriety. As there are so many elements

necessarily to be considered in determining the mental condition resulting from intoxication, which does not affect all persons alike, the degree of exaltation or depression is always a question of fact and never of law, or made to depend upon the quantity of alcohol swallowed in a stated period by a person whose capacity or responsibility is the subject of judicial inquiry: 14 Cyc. 1104. "Where a person," says a text-writer, "seeks to avoid responsibility for a contract on the ground of intoxication alone, it must appear that the drunkenness was so excessive that he was utterly deprived of the use of his reason and understanding, and was altogether incapable of knowing the effect of what he was doing. Any degree of intoxication which falls short of this will furnish no ground for release, in the absence of fraud on the part of the other contracting party. Mere ordinary drunkenness will not of itself avoid a deed or contract. The fact that a party is too much intoxicated to transact business safely, or is laboring under excitement from the use of intoxicating liquors, or is even so much under the influence of drink that his reason, memory and judgment are impaired, or he does not clearly understand the business in hand, does not imply such intoxication as will enable him to avoid his contracts": 17 Am. & Eng. Enc. Law (2 ed.), 401. The answer avers that the plaintiff took advantage of the defendant's intoxicated condition, and persuaded him to purchase the real property. The testimony shows that in a general conversation on the street about the value of land, participated in by the plaintiff and defendant in the presence of T. A. Wood and J. Parodi, the plaintiff inquired of the defendant what he would give for the lot described in the answer, and, upon the latter's offering $5,000 therefor, the bargain was closed, and at Fagan's request all the persons mentioned repaired to a saloon to take a social glass. A careful examination of the testimony fails to show any conduct upon plaintiff's part in relation to the transaction that can be characterized as fraudulent, or that he invited the defendant to take a drink or participated with him in any indulgence of the liquor habit until their minds had met in consummating the contract.

The declarations upon oath of J. B. Crossen, who is a reputable person, corroborated as it is by the testimony of other witnesses, convince us that the defendant at the time mentioned was not deprived of his memory or judgment, or that he was incapable of comprehending the nature or effect of his acts, and hence he had sufficient mental capacity to render him liable for his contracts.

3. It is argued by counsel for the defendant, however, that the sum which he stipulated to pay for the real property is so much in excess of its real value as to afford indisputable evidence of fraud, when Wiley's mental excitement, caused by excessive drinking, is considered, and, this being so, as the contract is only executory, and neither party has changed his condition in consequence of the alleged agreement, an error was committed by the trial court in not decreeing that the defendant was exonerated from liability on the obligations to which he subscribed his name. It must be admitted that the price which the defendant stipulated to pay for the land is exorbitant, and such disparity, coupled with the alleged inebriety, imposed upon the plaintiff the burden of showing the perfect good faith of the transaction: 2 Pomeroy, Equity (3 ed.), § 928. We think he has done this and established the fact that he was not guilty of any misconduct, and that the inadequacy of consideration is not so gross as to afford evidence of constructive fraud, when it is remembered that the defendant owned real property joining the lot which he agreed to purchase and that he said that the land which he stipulated to buy was of greater value to him than to any other person.

It is also maintained by defendant's counsel that the description of the land, as given in the written memorandum, shows that the contract is too indefinite for specific performance, and, if a contrary conclusion should be reached, the testimony discloses that, as two houses are standing on the premises, the building erected at the corner of the street mentioned will supply the specification; and hence an error was committed in awarding the relief granted. Though the answer correctly de-

scribes the real property, and the reply admits that the defendant agreed to purchase from the plaintiff the premises thus particularly mentioned, it is insisted by defendant's counsel that they never had an opportunity to inspect the contract until it was offered in evidence at the trial, and, supposing it contained a correct description of the land, they should not be bound by their averment. An order of court could undoubtedly have been secured that would have permitted an examination of the contract before the answer was filed (B. & C. Comp. § 533), if it had been considered necessary, but, failing to obtain it, no error was committed as alleged.

It follows that the decree should be affirmed, and it is so ordered.                                                        AFFIRMED.

---

Decided 2 July, 1907.